1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7   UNITED STATES OF AMERICA,

8                                            Plaintiff,

9        v.

10  JACK WILLIAM MORGAN,

11                                           Defendant.

12

Case No. 2:17-cr-0064-KJD-GWF
        2:20-cv-1828-KJD

ORDER

13        Presently before the Court is Defendant's Motion Pursuant to § 2255 to Vacate, Set Aside

14  or Correct Sentence (#138). Also, before the Court is Defendant's Motion to Appoint Counsel

15  (#136). Finally, before the Court, is Defendant's Motion for Remittance of Fines (#137).

16  I. Background

17        On February 22, 2017, a federal grand jury in Las Vegas, Nevada, returned an indictment

18  charging Morgan and a co-defendant with conspiracy to commit kidnapping in violation of 18

19  U.S.C. § 1201(c), and kidnapping in violation of 18 U.S.C. § 1201(a)(1). Morgan's trial began

20  on December 18, 2017. The next day, a jury convicted him of both crimes charged in the

21  indictment. On March 20, 2018, the district court sentenced Morgan to life imprisonment.

22        A. Trial Evidence

23        The evidence showed that Morgan arrived unannounced at the victim's apartment with a

24  stun gun, handcuffs, and duct tape. When the victim, who had ended her relationship with

25  Morgan about a year and a half earlier, expressed reluctance to go with Morgan to Texas, he

26  "pulled out a Taser," which he attempted to use on the victim, but "it didn't go off." Undeterred,

27  Morgan proceeded to choke the victim "unconscious while dragging [her] back into [her]

28  apartment." Morgan choked the victim unconscious multiple times.

The victim "fought for everything that [she] was worth" while Morgan wrapped her face with duct tape and used handcuffs to cuff her hands behind her back and to cuff her ankles. While this was taking place, the victim "kicked," "tried to scream," "flailed," and "tried to beg him." The victim was able to remove some duct tape from her face, but Morgan then "wrapped more duct tape around [her] face." After about a 20-minute struggle, Morgan dragged the victim from her apartment. In the process, the victim lunged for the fire alarm and kicked her neighbor's door. She locked her arms onto the stair railing before Morgan choked her into unconsciousness again. The victim's neighbor heard the commotion and when he opened his front door saw that his "neighbor was being kidnapped." He noticed that "she was handcuffed" and that "her face was turning purple" from being choked. The neighbor watched as the assailant "threw her in the back" of a white van with a Texas license plate and then drove away from the apartment complex. He then called 911 and met with police when they arrived.

The victim regained consciousness inside the van, where she saw Morgan's accomplice, Samuel Brown. Morgan and Brown restrained the victim with a chain around her neck that was connected to handcuffs on her wrists and feet. The chain was secured to "the bare metal of the interior of the van," which prevented her from "mov[ing] at all." The restraints were extremely tight and "hurt the entire time." At one point, Brown used rubbing alcohol to remove duct tape from the victim's hair, although Morgan told the victim that he would have preferred "to cut it out" because "he was going to shave [her] head anyway." Morgan told the victim he was taking her to a cave, where she would be "chained to some kind of an anchor." Morgan had prepared the cave to hold the victim "[o]n the top of a mountain in the middle of nowhere" in New Mexico using a pickax and shovels. Morgan also told the victim that "[she] belonged to him and he owned [her]" and that he had been preparing her abduction for a year and a half. About 12 hours later, New Mexico State Police spotted Morgan's van as it approached the town of Espanola. New Mexico law enforcement had been on the lookout for a white minivan with Texas license plates after receiving information about the kidnapping incident.

After they removed Morgan and Brown from the van, officers "could hear audible screams coming from inside the van." Officers opened a sliding door on the van and saw the

1  victim restrained inside. They observed "chains [that] went from her neck down to her – to her

2  wrists," which were in handcuffs, "[a]nd then, from the handcuffs, there was also a chain leading

3  down into the – the van as it was bolted in[.]" The victim was "very, very distraught . . . she was

4  crying and screaming for help." When police stopped Morgan's van it was "approximately a 10-

5  minute drive" to the cave where he planned to imprison his victim. The cave was not visible

6  from the roadway and required a "pretty steep hike over a very rocky terrain to climb up to it."

7  Morgan had excavated "two separate rooms," one of which was still being enlarged. One room

8  "had a bed carved out of stone" with a hole in the floor that "you could actually set a 4-gallon

9  pail into it." The room also had "a metal chain that was attached with an anchor in the floor."

10  Police found a .308 caliber rifle, "a lot of ammunition," and loaded magazines in the cave.

11         As a result of Morgan "beating the shit out of [her]," the victim suffered a number of

12  physical injuries, including a black eye, lacerations inside her lip, burst blood vessels from being

13  choked unconscious, bruises, and marks from the handcuffs around her wrists and legs. For

14  several days after her release, the victim had "blood come out of [her] nose and [her] mouth,"

15  prompting her to seek treatment by an ear, nose, and throat specialist.

16         <u>B. Procedural History</u>

17         The Court initially appointed the Federal Public Defender to represent Morgan. At his

18  April 18, 2017, calendar call, Morgan asked the court to allow him to represent himself. The

19  court told Morgan it was unwise for him to represent himself and "strongly urge[d]" him not to

20  do so. Morgan was unpersuaded and after the Court canvassed him as required by <u>Faretta v.</u>

21  <u>California,</u> 422 U.S. 806 (1975), it found that he had knowingly and voluntarily waived the right

22  to counsel.

23         The Court conducted another *Faretta* hearing with Morgan at a later calendar call on

24  December 12, 2017. Once again, the Court told Morgan that "a trained lawyer would defend

25  [him] far better than [he] could defend [him]self" and that it was "unwise for [him] to try and

26  represent [him]self." Morgan stood by his decision to forego representation, and the Court re-

27  affirmed that Morgan had "knowingly and voluntarily waived his right to counsel." On

28  December 19, 2017, after a two-day trial, a jury convicted Morgan as charged in the indictment.

1   At sentencing, the Court calculated a base offense level of 35. The Court applied an

2   eight-level upward departure to account for physical injury (U.S.S.G. § 5K2.2), extreme

3   psychological injury (U.S.S.G. § 5K2.3), the use of weapons or dangerous instruments (U.S.S.G.

4   § 5K2.6), and extreme conduct by the defendant (U.S.S.G. § 5K2.8). The guideline sentence at

5   offense level 43 was life imprisonment. See U.S.S.G. Ch. 5, Part A, Sentencing Table.

6   Defendant failed to object to any of these enhancements, causing stand-by counsel to

7   intervene and argue on his behalf. The Court found that a sentence within the applicable

8   guideline range without an upward departure "would not adequately take into account the

9   extreme circumstance of this case." The Court further found that Morgan was "a very dangerous

10  man" and that it could not speculate on "the risk that is posed to the public if he gets out and is of

11  the same frame of mind that he is now." Consequently, the Court imposed a sentence of life

12  imprisonment with five years of supervised release.

13  Stand-by counsel then filed an appeal and represented Defendant on appeal. On appeal,

14  Defendant argued that:

15  (1) Court should have inquired into the competency of the
    Defendant to present his own defense;

16

17  (2) a *Faretta* canvas should have been conducted at sentencing or
    the Court should have imposed counsel on defendant at
    sentencing;.

18

19  (3) Defendant was denied his right to present a complete defense;

20  (4) Defendant was denied his speedy trial rights; and

21  (5) Defendant's sentence was improperly enhanced.

22  The Ninth Circuit Court of Appeals affirmed the judgment of this Court, denying Defendant's

23  appeal on each ground. See Memorandum, No. 18-10106, May 15, 2019, Doc. No. 132.

24  Mandate, Doc. No. 135, issued on February 6, 2020. Defendant then filed the present motion on

25  September 30, 2020.

26  His motion asserts that his conviction is deficient for the following reasons: (1) he was

27  denied effective assistance of counsel when he tried to have new stand-by counsel appointed and

28  was denied; (2) he was denied his right to appeal because he tried to file his own appeal and

- 4 -

found that one had already been filed for him; (3) his conviction was obtained with evidence obtained pursuant to unlawful search and seizure; (4) by not submitting evidence of his theory of the case, the prosecution failed to disclose evidence favorable to defendant; (5) he was not tried by a jury of his Christian peers; (6) conviction was obtained by the knowing use of perjured testimony; and (7) he was denied compulsory process.

III. Legal Standard

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed the sentence. United States v. Monreal, 301 F.3d 1127, 1130 (9th Cir. 2002). Section 2255 provides four grounds upon which a sentencing court may grant relief to a federal prisoner: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255(a); see also Davis v. United States, 417 U.S. 333, 344–45 (1974); Monreal, 301 F.3d at 1130; United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999).

To warrant the granting of relief, the movant must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); see also United States v. Montalvo, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that Brecht's harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254."). Such relief is warranted only where a movant has shown "a fundamental defect which inherently results in a complete miscarriage of justice." Davis, 417 U.S. at 346; see also United States v. Gianelli, 543 F.3d 1178, 1184 (9th Cir. 2008).

Procedural Bar Doctrine

The general rule of the procedural bar doctrine is that claims that could have been, but were not, raised by the movant on direct appeal are not cognizable if presented in a § 2255 motion. See United States v. Frady, 456 U.S. 152 (1982) (a collateral challenge is not a substitute

1    for an appeal); <u>Sunal v. Large</u>, 332 U.S. 174 (1947) ("So far as convictions obtained in the

2    federal courts are concerned, the general rule is that the writ of habeas corpus will not be allowed

3    to do service for an appeal."); <u>Unites States v. Dunham</u>, 767 F.2d 1395, 1397 (9th Cir. 1985)

4    ("Section 2255 is not designed to provide criminal defendants repeated opportunities to overturn

5    their convictions on grounds which could have been raised on direct appeal.").  "The procedural-

6    default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to

7    by the courts to conserve judicial resources and to respect the law's important interest in the

8    finality of judgments." <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003).

9          "[A] procedural default arising from the failure to exhaust may be excused if the

10   petitioner 'can demonstrate cause for the default and actual prejudice as a result of the alleged

11   violation of federal law, or demonstrate that failure to consider the claims will result in a

12   fundamental miscarriage of justice.' " <u>Manning v. Foster</u>, 224 F.3d 1129, 1132–33 (9th Cir.

13   2000) (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)). "A fundamental miscarriage

14   of justice occurs where a 'constitutional violation has probably resulted in the conviction of one

15   who is actually innocent.' " <u>Id.</u> (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986)). Where a

16   defendant has procedurally defaulted a claim by failing to raise it on direct review, "the claim

17   may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual

18   'prejudice,' or that he is 'actually innocent.' " <u>Bousley v. United States</u>, 523 U.S. 614, 622

19   (1998) (citations omitted). This is because "habeas review is an extraordinary remedy and 'will

20   not be allowed to do service for an appeal.' " <u>Id.</u> at 621 (citation omitted). Accordingly, "most

21   claims are procedurally defaulted by both federal and state prisoners in habeas proceedings when

22   not raised on direct appeal, absent a showing of cause and prejudice or actual innocence." <u>United</u>

23   <u>States v. Braswell</u>, 501 F.3d 1147, 1149 n.1 (9th Cir. 2007).

24         <u>Relitigation Bar</u>

25         It is also well-established that claims or arguments a defendant previously raised on

26   direct appeal are not cognizable in a § 2255 motion. <u>Davis</u>, 417 U.S. at 342 (issues determined in

27   a previous appeal are not cognizable in a § 2255 motion absent an intervening change in the

28   law); <u>United States v. Redd</u>, 759 F.2d 699, 701 (9th Cir. 1985) (holding that claims previously

raised on appeal "cannot be the basis of a § 2255 motion"); <u>United States v. Currie</u>, 589 F.2d

993, 995 (9th Cir. 1979) ("Issues disposed of on a previous direct appeal are not reviewable in a

subsequent § 2255 proceeding."); <u>Egger v. United States</u>, 509 F.2d 745, 748 (9th Cir. 1975)

("Issues raised at trial and considered on direct appeal are not subject to collateral attack under

28 U.S.C. § 2255.") (citing <u>Clayton v. United States</u>, 447 F.2d 476, 477 (9th Cir. 1971) (holding

that the movant's "attempt to relitigate the legality of the search and seizure was properly

rejected by the district court" because that contention had already been rejected on direct

appeal)).

      This bar against relitigating issues in a § 2255 proceeding is an application of the law of

the case doctrine. <u>See</u> <u>United States v. Jingles</u>, 702 F.3d 494, 498 (9th Cir. 2012) ("A collateral

attack is the 'same case' as the direct appeal proceedings for purposes of the law of the case

doctrine."). "Under the 'law of the case' doctrine, a court is ordinarily precluded from

reexamining an issue previously decided by the same court, or a higher court, in the same case."

<u>Richardson v. United States</u>, 841 F.2d 993, 996 (9th Cir. 1988). "When a defendant has raised a

claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may

not be used as basis for a subsequent § 2255 petition." <u>United States v. Hayes</u>, 231 F.3d 1132,

1139 (9th Cir. 2000) (concluding that "[i]t is the law of this case that the government did not

violate its Brady obligation" where the defendant's Brady claims had already been expressly

addressed and rejected on direct appeal).

<u>IV. Analysis</u>

      First, the Court must dismiss all of Petitioner's claims based on the procedural bar

doctrine, because the claims could have been, but were not, raised by the movant on direct

appeal and are not cognizable in a § 2255 motion. <u>See</u> <u>Frady</u>, 456 U.S. at 155. Further, it was not

ineffective for appellate counsel to fail to raise them, because they were losing arguments.

Counsel does not render ineffective assistance by failing to raise a non-meritorious argument.

<u>James v. Borg</u>, 24 F.3d 20, 27 (9th Cir. 1994) ("failure to make a futile motion does not

constitute ineffective assistance of counsel"); <u>Shah v. United States</u>, 878 F.2d 1156, 1162 (9th

Cir. 1989) (same); <u>Morrison v. Estelle</u>, 981 F.2d 425, 429 (9th Cir. 1992) (no ineffective

1    assistance of appellate counsel for failure to make an argument that would not have been

2    successful). Out of an abundance of caution, the Court will discuss each of movant's defaulted

3    claims to demonstrate the arguments were non-meritorious.

4              A. Failure of the Court to Appoint New Stand-by Counsel at Defendant's Request

5              Defendant argues that his stand-by counsel was ineffective and that the Court should

6    have dismissed him and appointed new stand-by counsel. However, there is no constitutional

7    right to stand-by counsel. See McKaskle v. Wiggins, 465 U.S. 168, 183 (citing Faretta, 422 U.S.

8    at 806); U.S. v. Mendez-Sanchez, 563 F.3d 935, 946-47 (9th Cir. 2009). Further there is no right

9    to choose one's stand-by counsel just as there is no right to appointed counsel of one's choice.

10   See United States v. Youker,718 Fed. Appx. 492, 495 n.1 (appointing stand-by counsel even

11   when Defendant asserts "we don't get along" is not a Sixth Amendment violation) (citing

12   McKaskle, 465 U.S. at 180-81). Therefore, failure to raise this issue on appeal would not have

13   been ineffective assistance of counsel.

14             B. Denied his Right to Appeal

15             Further, Defendant asserts that his rights were violated when his stand-by counsel filed

16   notice of appeal and represented him on appeal. However, Defendant does not have a Sixth

17   Amendment right to represent himself on appeal. Martinez v. Court of Appeal of Cal., 528 U.S.

18   152, 163 (2000). Further, Defendant has made no showing that he moved either this Court or the

19   Court of Appeals for the opportunity to represent himself on appeal. See id. at 161 (at the

20   minimum the Due Process Clause would require a *Faretta* like process in which a defendant

21   would unequivocally invoke self-representation and knowingly and intelligently waive

22   representation by counsel). Here, movant's emotional collapse at sentencing during which stand-

23   by counsel had to step in on his behalf adequately demonstrates that appellate counsel's action in

24   filing a notice of appeal was appropriate.

25             C. Unlawful Search and Seizure

26             Defendant appears to argue that any search of his phone or phone records required a

27   warrant. However, Defendant has failed to file any points and authorities in support of this

28   argument. Further, Defendant did not file a motion to suppress and cannot argue that his failure

1    to do so was ineffective assistance of counsel because he represented himself. <u>Faretta</u>, 422 U.S.

2    at 834 n. 46 ("a defendant who elects to represent himself cannot thereafter complain that the

3    quality of his own defense amounted to a denial of 'effective assistance of counsel.'"). Defendant

4    waived his Fourth Amendment argument by failing to raise it before and during trial.

5          D. Failure of the Government to Disclose Evidence (Movant's Ground Four and Six)

6          Presumably, Defendant is again attempting to raise his argument that his violent assault

7    of the victim and the kidnapping were justified by the victim's current and past sexual behavior.

8    The Government was under no obligation to produce the evidence at trial and Defendant's

9    attempts to do so were rejected by the Court because Defendant failed to comply with Federal

10   Rule of Evidence 412. <u>See</u> <u>Order</u>, Doc. No. 90. Further, this claim is barred by the law of the

11   case, because it was raised in Defendant's direct appeal and rejected by the Ninth Circuit Court

12   of Appeals. <u>See</u> Memorandum, Doc. No. 132 ("It is inconceivable that the excluded evidence

13   could have changed the verdict.").

14         E. Court did not allow Voir Dire Questions involving Juror's Religious Beliefs

15         Defendant argues that the jury was "morally corrupt" because Christians were not

16   included, because he was unable to question them about their religious beliefs. "[T]he selection

17   of a petit jury from a representative cross section of the community is an essential component of

18   the Sixth Amendment right to a jury trial." <u>Taylor v. Louisiana</u>, 419 U.S. 522, 528 (1975). A

19   defendant establishes a prima facie violation of the fair-cross-section requirement by showing

20   "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the

21   representation of this group in venires from which juries are selected is not fair and reasonable in

22   relation to the number of such persons in the community; and (3) that this underrepresentation is

23   due to systematic exclusion of the group in the jury-selection process." <u>Duren v. Missouri</u>, 439

24   U.S. 357, 364 (1979).

25         Plaintiff has failed to adduce evidence that Christians are a "distinctive group in the

26   community", that the venire from which the jury was selected was not fair and reasonable in

27   relation to the number of Christians in the community and that the alleged underrepresentation

28   was due to system exclusion in the jury-selection process. This claim would have been dismissed

1    if appellate counsel had raised it.

2           Further, the Sixth Amendment imposes "no requirement that petit juries actually chosen

3    must mirror the community and reflect the various distinctive groups in the population.

4    Defendants are not entitled to a jury of any particular composition." Taylor, 419 U.S. at 538.

5    Here, by refusing to allow questions about the jurors' religious beliefs, the selection of the jury

6    was based on religion neutral criteria. The prosecution, the defense, and the Court could not

7    frame a preemptory challenge or grant a motion to strike a juror for cause based on a juror's

8    religious belief. Defendant has demonstrated no "systematic exclusion of eligible jurymen" by

9    unequal application of the law that demonstrates intentional discrimination. U.S. v. Mitchell, 502

10   F.3d 931, 952 (9th Cir. 2007). Accordingly, this claim would have been dismissed if appellate

11   counsel had raised it.

12          F. Denial of Compulsory Process

13          Defendant argues that he was denied compulsory process to produce witnesses at his trial.

14   However, Defendant has failed to identify any particular witness by name, that if called, would

15   have provided testimony that would aid his defense. While Defendant did file a motion to

16   subpoena witnesses (#36), it was denied without prejudice by the magistrate judge because

17   Defendant had failed to show the necessity of the witness's presence for an adequate defense

18   pursuant to Rule 17(b). The magistrate judge specifically allowed Defendant to refile the motion

19   containing the adequate showing. Defendant neither refiled the motion nor appealed the

20   magistrate's order. Therefore, Defendant has waived this claim and it was not ineffective for

21   appellate counsel to fail to raise it on direct appeal.

22          G. Summary

23          Accordingly, Defendant's § 2255 motion must be denied, because Defendant's claims

24   were either rejected on direct appeal, waived by Defendant's failure to raise before or at trial, and

25   insufficient because Defendant has failed to demonstrate that appellate counsel was ineffective

26   for failing to raise them on direct appeal.

27

28

V. Motion to Appoint Counsel

An indigent petitioner seeking relief under 28 U.S.C. § 2255 may move the court for appointment of representation to pursue that relief. 18 U.S.C. § 3006(A)(2)(B). The court has discretion to appoint counsel when the interest of justice so requires. 18 U.S.C. § 3006(A)(2). The interest of justice so requires where the complexities of the case are such that denial of counsel would amount to a denial of due process. See Brown v. United States, 623 F.2d 54, 61 (9th Cir.1980).

Here, the Court has reviewed the documents and pleadings on file in this matter and finds that appointment of counsel is not warranted. The issues raised in Defendant's underlying § 2255 motion are not complex and Defendant has made no showing as to why denial of counsel would amount to a denial of due process. Therefore, the Court finds that Defendant is not entitled to counsel.

VI. Motion for Remittance of Fines

Defendant has also moved the Court to remit his fines because they are impeding his efforts to utilize different programs at the prison. However, the Court does not have authority to remit Defendant's fines, except on a motion from the Government. See 18 U.S.C. §3573 (upon petition of the government the court may remit a fine). Here, the Government has not moved for remittance. Further, Defendant has done nothing to meet any burden he would have, such as providing a certified account statement from his custodial institution demonstrating his alleged lack of funds, or even citing authority that would allow the Court to exercise such authority. Accordingly, Defendant's motion to remit is denied.

VII. Certificate of Appealability

To appeal this order, Morgan must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b)(1); 9th Cir. R. 22–1 (a). To obtain that certificate, he "must make a substantial showing of the denial of a constitutional right, a demonstration that ... includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 483-

84 (2000) (quotation omitted). This standard is "lenient." <u>Hayward v. Marshall</u>, 603 F.3d 546, 553 (9th Cir. 2010) (en banc).

However, Defendant waived his claims by failing to raise them pre-trial, at trial or on appeal Further, even if they had been raised, they were unquestionably denied in accordance with the law. In other words, Defendant has not demonstrated that a reasonable jurist could even debate about whether Morgan suffered a denial of a constitutional right. Accordingly, the Court denies Morgan a certificate of appealability.

<u>VIII. Conclusion</u>

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion Pursuant to § 2255 to Vacate, Set Aside or Correct Sentence (#138) is **DENIED**;

IT IS FURTHER ORDERED that Defendant's Motion to Appoint Counsel (#136) is **DENIED**;

IT IS FURTHER ORDERED that Defendant's Motion for Remittance of Fines (#137) is **DENIED**;

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Respondent and against Petitioner in the corresponding civil action, 2:20-cv-1828-KJD, and close that case;

IT IS FINALLY ORDERED that Defendant is **DENIED** a Certificate of Appealability. Dated this 20th day of October 2020.

Kent J. Dawson
United States District Judge